IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| TAMMY MOREE, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:10-CV-0006-BF |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of the Social | § | |
| Security Administration, | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

This is a consent case before the United States Magistrate Judge. This is an appeal from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying the claim of Tammy Moree ("Plaintiff") for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") and Supplemental Security Income ("SSI") under Title XVI of the Act. The Court has considered Plaintiff's Brief, filed May 18, 2010, Defendant's Brief, filed June 16, 2010, and Plaintiff's Reply Brief, filed June 30, 2010. The Court has reviewed the parties' evidence in connection with the pleadings and hereby orders that the Commissioner's decision be REVERSED and REMANDED with directions that the application for benefits be granted and for the computation and payment of an award of benefits beginning October 29, 1999.

### I. BACKGROUND[1]

*A.     Procedural History*

Plaintiff filed applications for SSI and DIB on March 23, 2001, alleging a disability onset

---

[1]The following history comes from the transcript of the administrative proceedings, which is designated as "Tr."

1

date of October 29, 1999. (Tr. 55-56; 216-19.) Her claims were denied both initially and upon reconsideration. (Tr. 20-21; 220; 228.) Plaintiff timely requested a hearing, and a hearing was held on August 29, 2002 before Administrative Law Judge ("ALJ") Lance K. Hiltbrand. (Tr. 35-36; 296.) On January 11, 2003, ALJ Hiltbrand issued his decision finding Plaintiff not disabled, and Plaintiff requested review by the Appeals Council ("AC"). (Tr. 232-41; 247.) On December 24, 2003, the AC granted her request, vacated the ALJ's decision, and remanded the case for re-hearing with instructions. (Tr. 242-46.) A second hearing was held before ALJ Eleanor Moser on October 12, 2004. (Tr. 336.) On March 17, 2005, ALJ Moser issued another unfavorable decision. (Tr. 11-18.) Plaintiff again requested review by the AC, and on June 17, 2005, that request was denied. (Tr. 6-9;10.)

Plaintiff timely initiated an action for judicial review in Civil Action Number 7:05-CV-00144-BD. (Tr. 403; 405.) On October 10, 2006, the Court found that ALJ Moser failed to comply with the AC's instructions to:

- update the record with existing and available medical evidence. Obtain evidence from a medical expert psychologist, if available, to clarify the nature and severity of the claimant's impairments and to comment on maximum resulting functional abilities;

- further evaluate the claimant's mental impairments in accordance with the special technique described in 20 C.F.R. 404.1520a and 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 404.1520a(c) and 416.920a(c); and

- give further consideration to the claimant's maximum residual functional capacity and provide a complete and clear function-by-function assessment and appropriate rationale with specific references to evidence of record in support of the assessed limitations.(Tr. 402-10.)

The Court vacated the Commissioner's decision and remanded Plaintiff's claim for further

2

development of the preceding issues. (Tr. 409-10.) The AC issued its remand order on November 9, 2006 for further proceedings consistent with the Court's order. (Tr. 413.) On October 9, 2007, a third hearing was held before ALJ Tela L. Gatewood. (Tr. 508.) ALJ Gatewood denied Plaintiff's claim a third time on September 25, 2009. (Tr. 381-99.) In the decision, ALJ Gatewood failed to provide a function-by-function assessment and appropriate rationale when determining Plaintiff's residual functional capacity ("RFC"), as ordered by the District Court and AC. Plaintiff waived review by the AC and filed this action on January 21, 2010, seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. §405(g). (Doc. 1.) This matter now is ripe for consideration on the merits.

### B. *Factual History*

#### 1. Plaintiff's Age, Education, and Work Experience

Plaintiff's date of birth is May 9, 1961. (Tr. 55.) She has a high school education. (Tr. 71.) According to the vocational expert ("VE") at the third hearing, Plaintiff's past work includes that of plastic fabricator, chiropractor assistant, cashier checker, and assistant manager of a convenience store. (Tr. 531-32.)

#### 2. Plaintiff's Medical Evidence

Plaintiff suffered a work-related injury in June 1999, which caused an onset of pain to her neck extending to her shoulders. Her medical records show a long history of treatment related to this injury. Electromyography and nerve conduction studies performed in March 2000 by Dr. Lim, a neurologist, showed chronic cervical radiculopathy involving the right C7 nerve root. (Tr. 118.) Other diagnostic tests showed "minimal rightward curvature and straightening of the upper cervical spine . . . compatible with paraspinous muscle spasm" and evidence of a soft tissue bulge at the C5/6

and C-6/7 level. (Tr. 119-26.)

She started with and has continued with chiropractic care from Dr. Wolff. (Tr. 123; 215; 272 On referral from Dr. Wolff, Plaintiff began treatment with Dr. Herren, a physiatrist, in January 2001. (Tr. 146.) He noted restricted cervical range of motion and pain with forward flexion and cervical extension. (Tr. 146-49.) He assessed cervical radicular syndrome, major depression, and mechanical disorder, possibly with facet disorder and/or myofascial pain. (*Id.*) For treatment she has received several cervical epidural steroid injections, cervical facet medial branch blocks, electrical stimulation, and rhizotomies. (Tr. 133-39; 145; 199-204.) She has had various levels of success with these treatments. Plaintiff has also undergone physical therapy. (Tr. 277-78; 283-84; 286-92.) The therapy resulted in increased upper arm strength but did little for Plaintiff's level of pain. (Tr. 292.)

Since the injury, Plaintiff has also suffered from severe migraine headaches and muscle spasms. On her first visit with Dr. Herren, he noted that the trigger point injections had resulted in "essentially no improvements" and that Plaintiff was still taking medication to treat severe migraine headaches. (Tr. 146.) In August 2002, Dr. Herren noted problems with muscle spasms, producing cervicogenic headaches. (Tr. 202-03; 272; 274; 281.) Plaintiff then received Botox injections, which gave approximately eight weeks of relief from headaches and muscle spasms. (Tr. 276.) Since then, she has reported to the emergency room periodically due to migraines. (Tr. 443-48; 489-95; 484-85; 498-99; 486-87.)

In May 2000, for purposes of worker's compensation, Dr. Chapman, a chiropractor, opined that Plaintiff had reached maximum medical improvement ("MMI") and had an 11% whole person partial permanent impairment. (Tr. 119-26.) Plaintiff underwent an RFC evaluation in December 2001. (Tr. 205-14.) The examiner reported that the results "do not show any significant signs of

4

symptom magnification however she did exhibit chronic pain behaviors which may have limited her true capabilities on the test." (*Id.*) The examiner found Plaintiff capable of lifting 24 pounds occasionally, ten pounds frequently and three pounds constantly. (*Id.*) Plaintiff subjective and measured maximum tolerance for sitting was thirty minutes and her subjective maximum tolerance for standing was thirty minutes. (*Id.*)

After her work-related injury, Plaintiff was also diagnosed with major depression. She began treatment with Dr. Sabine in July 2000 and has taken antidepressants since that time. (Tr. 150-68.) On July 11, 2000, Plaintiff reported "depressed mood, anhedonia, excessive guilt, feelings of worthlessness, terminal insomnia, decreased appetite, excessive fatigue, and reduced concentration." (Tr. 165-68.) She also reported frequent panic attacks, often triggered by anger. (*Id.*) Dr. Sabine administered IQ tests, which showed that Plaintiff had a verbal score of 85, a performance score of 113, and a full scale score of 97. (*Id.*) The discrepancy between the verbal and performance scores suggested a learning disability. (*Id.*) Testing also showed Plaintiff reads at the eighth grade level. (*Id.*) Her spelling and arithmetic were at the sixth grade level. (*Id.*) Dr. Sabine noted pervasive depression and anxiety. (*Id.*) Other tests showed a "cry for help" profile with preoccupation with physical complaints and difficulties with concentration. (*Id.*) Dr. Sabine noted that Plaintiff was "effortful in this testing and this should be considered a valid estimate of her current functioning." (*Id.*) Dr. Sabine's assessment was (1) major depression, recurrent, moderate, (2) psychological factors affecting physical illness, (3) reading disorder, (4) mathematics disorder, and (5) dependent traits. (*Id.*) Her estimated global assessment of functioning ("GAF") was 50 with a past-year-

maximum GAF of 55.[2] (*Id.*)

Plaintiff continued to see Dr. Sabine for treatment. On October 11, 2000, Plaintiff discussed how her pain and depression have led to severe anhedonia. (Tr. 164.) On November 8, Dr. Sabine noted Plaintiff was "very passive, has very little social interaction, and her activity level is low." (Tr. 162.) On December 18, 2000, he reported she was feeling better in her mood. (Tr. 161.) On January 17, 2001, he noted that she "continues to struggle with depression." (Tr. 160.) On January 24, he reported Plaintiff "continues to lack motivation to increase her activity level." (Tr. 159.) On May 8, 2001, notes show Plaintiff "continues to cycle down into lethargy, apathy, and anhedonia." (Tr. 158.) She reported the same on May 21. (Tr. 157.) She reported doing more things out of the house in June, leading to an improved mood, though she continued to experience pain and depression. (Tr. 155-56.) In September, she reported experiencing less pain. Dr. Sabine felt it was an ideal time to make "serious moves ahead." (Tr. 152-53.) In October, she showed increased strength and effort and a greater activity level. (Tr. 150-51.)

On July 16, 2011, Plaintiff underwent a psychiatric examination by Dr. Ashaye, a consultative examiner. (Tr. 127-30.) Dr. Ashaye noted that Dr. Sabine's psychological evaluation had been provided to him and opined that the information given by Plaintiff and her mother was reliable. (*Id.*) Plaintiff reported increasing depression since she hurt her arm and neck at work. (*Id.*) She also reported being able to groom herself and handle the family finances. (*Id.*) She complained of having no motivation to do anything. (*Id.*) Dr. Ashaye's diagnosis was major depressive disorder,

---

[2]A GAF score represents a clinician's judgment of an individual's overall level of functioning. *See* American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text rev. 2000) (DSM). A GAF score of 41-50 indicates serious symptoms and/or a serious impairment in social, occupational, or school functioning. *See id.* A GAF score of 51-60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *See id.*

recurrent and severe, without psychotic symptoms. (*Id.*) Stressors were economic and occupational problems. (*Id.*) The estimated GAF was 45.(*Id.*)

On August 3, 2001, Dr. Phillips, a non-examining state agency medical consultant ("SAMC"), opined that Plaintiff was "moderately limited" in her abilities to: (1) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (2) work in coordination with or proximity to others without being distracted by them; (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (4) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. (Tr. 169-71.) Dr. Phillips reported that "alleged limitation of severity not fully supported by MER [medical evidence of record] and other evidence." (Tr. 171.) Dr. Hillman, another SAMC, affirmed Dr. Phillips' opinions on November 28, 2001. (*Id.*)

On June 28, 2006, Plaintiff saw Dr. Huff, an orthopedic surgeon, for a physical examination in connection with her worker's compensation case. (Tr. 433-40.) Dr. Huff stated that "it is noteworthy the Ms. Moree has had a lot of depression and was very suicidal at one time in spite of taking medication." (*Id.*) He noted she has continued to take medication which has been helpful and she had not had any plans or ideas for suicide "for some time."(*Id.*) Dr. Huff diagnoses were chronic neck pain, cervicogenic headaches, cervical facet joint syndrome, depression, and observation for cervical radiculopathy. (Tr. 435-40.) In 2007, she was diagnosed with chronic neck pain, depression, and chronic migraines. (Tr. 458-60.)

On July 17, 2008, Dr. Kownacki, consultative examiner, performed a psychological evaluation on Plaintiff. (Tr. 500-03.) Dr. Kownacki reviewed Plaintiff's history as well as supplemental data provided by the state agency. (*Id.*) On examination, he noted good grooming and

hygiene, generally euthymic and somewhat expansive mood, alert and fully cooperative, speech and thought processes unremarkable, no signs of psychosis or delusions, weak short-term memory, fair attention and concentrating, and judgment and insight intact. (*Id.*) On IQ testing, Plaintiff obtained a verbal IQ of 74, a performance IQ of 98, and a full scale IQ of 84. (*Id.*) Dr. Kownacki stated that her "verbal comprehension was significantly lower than nonverbal intelligence and working memory was extremely low - suggesting severely impaired attention and concentration." (*Id.*) He noted that although she may have always had an attention deficit, it is worsened by her chronic pain, depression, and anxiety. (*Id.*) He also noted a mild learning disability that affects all the major domains. (*Id.*) His diagnoses were: major depressive disorder, recurring, severe; cognitive disorder not otherwise specified, rule out attention deficit disorder; generalized anxiety disorder; and learning disorder not otherwise specified. (*Id.*) He assigned current and past-year-maximum GAF ratings of 55. (*Id.*)

Dr. Kownacki also completed a mental RFC assessment. (Tr. 504-07.) He opined that Plaintiff has an "extreme" limitation in the ability to understand and remember complex instructions, "marked" limitations in the abilities to make judgments on simple work-related decisions and carry out complex instructions, and "moderate" limitations in her abilities to: understand, remember, and carry out simple instructions; make judgments on complex work-related decisions; interact appropriately with the public; interact appropriately with supervisor(s); interact appropriately with coworkers; and respond appropriately to usual work situations and to changes in a work setting. (*Id.*)

### 3. Plaintiff's Hearing

At Plaintiff's third hearing, the VE testified that Plaintiff has past work as a plastic fabricator

(medium, skilled, SVP of 7), cashier checker (light, semi-skilled, SVP of 3), chiropractor assistant (medium, skilled, SVP of 6), and assistant manager of a retail store (light, semi-skilled, SVP of 5). (Tr. 531-32.) The ALJ posed the an initial hypothetical individual with the following characteristics: (1) Plaintiff's age, education and work experience; (2) the ability to lift and/or carry and push and/or pull twenty pounds occasionally and ten pounds frequently; (3) the ability to sit, stand and walk as required; (4) no ability to stoop, crouch, or climb more than occasionally; (5) no ability to crawl or climb ladders, ropes, or scaffolds; and (6) no ability to use vibrating tools or equipment. (Tr. 532). The VE opined that a person so described could perform Plaintiff's past jobs of cashier-checker and assistant retail store manager, but could not perform her other past work. (*Id.*) The VE then testified that if that person is also limited to occasional reaching and handling with the non-dominant arm, she could not perform the job of cashier checker. (Tr. 532-53.) The VE also testified that the additional limitation would "certainly have an effect" on her ability to work as an assistant manager. (*Id.*) He then stated that the person could perform work as a ticket taker/usher, flagger, parking lot attendant, and floor attendant (light, unskilled, SVP of 2). (Tr. 533.)

The ALJ then asked the VE to add the following further limitations: limited ability to work with the general public and limited to work of three to four-step tasks. (Tr. 533-34.) The VE opined that these additional limitations, with the others already stated, would eliminate Plaintiff's past jobs as a cashier-checker and assistant manager, as well as the "usher" and "floor attendant" jobs, but would not preclude performance of the "flagger" and "parking lot attendant" jobs. (Tr. 534).

On cross-examination, Plaintiff's counsel asked the VE to "add to hypothetical number one" that the person would have to leave work at least once a week due to severe migraine headaches. (Tr. 535). The VE opined that this limitation would preclude all work. (*Id.*) Counsel then asked the VE

9

to add to the ALJ's first hypothetical question: moderate limitations in ability to perform activities within a schedule, to maintain regular attendance and be punctual within customary tolerances, to work in coordination with and proximity to others without being distracted by them, to get along with co-workers or peers without distracting them or exhibiting behavioral extremes, to maintain socially appropriate behavior, and to adhere to basic standards of neatness and cleanliness. (Tr. 535-536). The VE replied: "Well I think it would basically just exacerbate those questions that we've answered as far as not being able to get along with folks, not being able to get along with the public, having to leave the workstation and not being able to stay on the tasks for a full week." (Tr. 536). The VE confirmed that "those really are the same questions asked a different way." (*Id.*)

Finally, the VE stated that the four occupations he identified had not changed in significant degree, in terms of numbers or content, since December 2004 and that he had not differed from the Dictionary of Occupational Titles ("DOT") in his descriptions of the jobs. (Tr. 538).

### C. ALJ's Findings

First, the ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2004. (Tr. 388.) Second, she found that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. (Tr. 389.) Third, she found Plaintiff to have the following severe impairments: cervical disc budges with radiculopathy; myofascial pain syndrome; headaches; major depressive disorder; a learning disability, not otherwise specified; and a generalized anxiety disorder. (*Id.*) Fourth, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I of the Regulations. (Tr. 391.) Fifth, she found that Plaintiff has the RFC to perform a range of light work that includes: ability to lift and/or carry and push and/or pull twenty pounds occasionally and ten

pounds frequently; ability to sit, stand, and walk as required; ability to perform simple and some detailed work of about four steps; and no ability to use vibrating tools or equipment. (Tr. 393.) Sixth, the ALJ found that Plaintiff is unable to perform any past relevant work. (Tr. 396.) Seventh, she determined that Plaintiff was a younger individual on the disability onset date, has at least a high school education, and is able to communicate in English. (Tr. 397.) Eighth, the ALJ found transferability of job skills not material. (*Id.*) Ninth, she found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) Finally, the ALJ found that Plaintiff has not been under a disability, as defined by the Act, from October 29, 1999 through December 31, 2004, the last date insured. (Tr. 398.)

## II. STANDARD OF REVIEW

A claimant must prove that she is disabled for purposes of the Act to be entitled to social security benefits. *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Act is "the inability to engage in any substantial gainful activity by reason of any medically-determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. §404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*. Once the claimant satisfies her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the Regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan*, 38 F.3d at 236; 42 U.S.C.A. §405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not re-weigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

Having reviewed the applicable legal standards, the Court now turns to the merits of the case.

## III. ANALYSIS

Plaintiff contends that the ALJ committed reversible legal error by failing to comply with the District Court and AC's instructions following remand and that substantial evidence does not support the ALJ's mental and physical RFC finding. Plaintiff asks the Court to reverse the Commissioner's decision and render a judgment finding Plaintiff disabled. Defendant argues that the ALJ did comply with the remand instructions and that substantial evidence supports the decision.

Although Plaintiff presents two separate issues for review, the underlying contention is that this case should be reversed and remanded with instructions to pay benefits because (1) the Commissioner violated the mandate rule and (2) substantial evidence does not support the ALJ's decision that Plaintiff's RFC enables her to perform other work in the national economy.

The mandate rule provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate and may not disregard the explicit directives of the appellate court. *Brown v. Astrue*, 597 F. Supp. 2d 691, 695 (N.D. Tex. 2009) (citing *United States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998)). "In Social Security proceedings, the district court's position to the Appeals Council (and indirectly, the ALJ) is analogous to that of the court of appeals' position with respect to a trial court." *Id.* at n.3 (quoting *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1215 (C.D. Cal. 2005)). The Commissioner is not entitled to endless opportunities to apply the proper legal standard correctly and gather evidence to support his conclusion. *Friday v. Comm'r of Soc. Sec. Admin.*, No. 3:08-CV-0538-K, 2009 WL 1181068, at *6 (N.D. Tex. [DATE] 2009) (citing *Miller v. Chater*, 99 F.3d 972, 978 (10th Cir. 1996)).

Here, the ALJ clearly violated the District Court's order by failing to "provide a complete

and clear function-by-function assessment and appropriate rationale with specific references to evidence of record" in support of the RFC determination. Such disregard of the District Court's directive constitutes legal error and requires reversal. *See, e.g. Tauber v. Barnhart*, 438 F. Supp. 2d 1366, 1376 (N.D. Ga. 2006) (ALJ committed legal error by failing to follow remand order requiring further development of record); *Thompson v. Barnhart*, No. 05-395, 2006 WL 709795, at *11-12 (E.D. Pa. Mar. 15, 2006) (same as to failure to obtain mental status examination and medical source statement on remand); *Jones v. Barnhart*, 372 F. Supp. 2d 989, 1005-06 (S.D. Tex. 2005) (same as to failure to make function-by-function RFC assessment and findings as to the physical and mental demands of claimant's past relevant work on remand); *Hutchison v. Apfel*, No. 2:98-CV-087, 2001 WL 336986, at *11 (N.D. Tex. Mar. 9, 2001) (same as to failure to make RFC assessment with specific references to the record on remand). *But see Coy v. Barnhart*, No. SA-04-CA-0256-RF, 2005 WL 1021041, at *2 (W.D. Tex. Apr. 25, 2005) ("A complaint that the ALJ failed to obtain additional evidence or conduct further evaluation of an issue as directed by the Appeals Council is only relevant to the extent those matters impact the issues this Court must determine.").

In order to excuse this deficiency, Defendant contends that "while the ALJ must consider Moree's functions, she is not required to recite each of Moree's by rote in her decision. There is a difference between what an ALJ must consider and what an ALJ must articulate in her decision." (D.'s Brief at 8.) In support of this argument, Defendant cites to Social Security Ruling 96-8p, which details what the ALJ is required to articulate regarding a claimant's RFC but does not require a function-by-function assessment. *See* SSR 96-8p, 1996 WL 374184, at *7. Defendant's argument is without merit.

Although an ALJ generally is not required to provide a function-by-function analysis when

determining a claimant's RFC, the District Court and AC instructed the ALJ to "*provide*" one on remand. (Tr. 402-10 (emphasis added).) The Regulations state that the ALJ "*shall* take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals council's remand order." 20 C.F.R. § 404.977(b) (emphasis added).Therefore, the ALJ was required to provide a function-by-function analysis in her decision and erred by failing to do so.

When a court has no basis to conclude that additions to the record might support the Commissioner, remand for further administrative proceedings is futile. *Friday*, 2009 WL 1181068, at *6 (citing *Cline v. Sullivan*, 939 F.2d 560, 569 (8th Cir. 1991)). Plaintiff filed her applications for DIB and SSI ten years ago. Her insured status for benefits expired over six years ago, before the last remand hearing conducted by ALJ Gatewood. The case has been remanded twice with the same instructions each time, and the ALJ has failed to follow those instructions each time. After three administrative hearings, two Appeals Council reviews, and a civil action, the Commissioner has had clear directions from this Court and the AC which it has failed to follow. The Commissioner has had more than ample opportunities to apply the law accurately. The decision of an appellate court, reversing a summary judgment of the district court without remand to the Commissioner, is instructive:

> These deficiencies in the findings of the ALJ are not attributable to any error of the claimant. . . . Smith has already had two hearings before an ALJ, followed by two petitions to the Appeals Council, two appeals to the United States District Court . . . and an appeal to this court. . . . Must an indigent claimant, who has already battled for seven years, wait with the patience of Job for yet another remand before he can collect the relatively modest amounts available through such an award? We think not . . . . [T]he majority believes a further remand would be unnecessary and a contravention of fundamental justice.

*Smith v. Califano*, 637 F.2d 968, 973 n. 1 (3d Cir. 1981). Another appellate court, facing a situation

15

similar to the one before this Court, stated:

> We are convinced that Bradley proved that he cannot return to any past relevant work. Ordinarily, the burden would then shift to the Secretary, and he would be given a chance to prove that there are other jobs that Bradley can perform. However, there has already been one remand and we are not confident that a second remand will produce a correct decision.

*Bradley v. Bowen*, 800 F.2d 760, 765 (8th Cir.1986). As in *Bradley*, if this was an ordinary case, the Commissioner would be given the opportunity to prove that there are other jobs that Plaintiff could have performed during the period in question. *See id.* However, the Commissioner has given this Court no reason to believe that an ALJ will obey the mandate rule if this case is remanded for the third time. The District Court may direct an award of benefits if the uncontroverted evidence clearly establishes that the claimant is entitled to relief. *Taylor v. Bowen*, 782 F.2d 1294, 1298-99 (5th Cir.1986).

ALJ Gatewood found that Plaintiff has the RFC to perform a range of light work limited by an inability to use vibrating tools and equipment and an ability to perform detailed work of no more than four steps. She stated that other limitations asked in hypothetical questions at the hearing were not supported by the evidence. Notably, in making this determination, the ALJ gave great weight to the SAMC's opinions and little, if any, weight to the opinions of Dr. Kownacki, the post-hearing consultative examiner. In discounting Dr. Kownacki's report, the ALJ stated that the opinions were "not consistent with the narrative, the estimated global assessment of functioning, and the ability to manage funds." He further stated that Plaintiff had a financial incentive to exaggerate her symptoms to the post-hearing examiner.

The Court first notes that Dr. Kownacki was consulted because the District Court and AC instructed the ALJ to obtain additional evidence from a psychological expert on remand. Yet, in her

16

decision, the ALJ chose to discredit the newly retained expert's opinions, rely on the SAMC opinions from 2001, and determine the exact same RFC previously determined by ALJ Moser. Substantial evidence does not support the ALJ's decision to discount the consultative examiner and rely heavily on the SAMC's opinion.

First, Dr. Kownacki's assessment was based on his personal examination of Plaintiff, tests performed by Dr. Kownacki personally, and supplemental data provided by the state agency. He specifically cites the tests performed during his evaluation as the basis for his conclusions. The SAMC did not examine Plaintiff personally and based his opinions only on the record provided to him. The SAMC cites no specific pieces of evidence; rather, he states that the "alleged limitation of severity [is] not fully supported" by the medical evidence of record. Furthermore, Dr. Kownacki's opinions were reached in 2008. The SAMC's opinions were reached in 2001, at which time much of the medical evidence in the record did not yet exist.

Second, the Court is unable to find any inconsistencies in Dr. Kownacki's report. Dr. Kownacki opined that Plaintiff had "extreme" limitation in the ability to understand and remember complex instructions, "marked" limitation in the abilities to make judgments on simple work-related decisions and carry out complex instructions, and "moderate" limitations in her abilities to: understand, remember, and carry out simple instructions; make judgments on complex work-related decisions interact appropriately with the public; interact appropriately with supervisor(s); interact appropriately with coworkers; and respond appropriately to usual work situations and to changes in a work setting. Contrary to the ALJ's assertion, these limitations are not inconsistent with the narrative. After his interview with Plaintiff, Dr. Kownacki noted good grooming and hygiene, a generally euthymic and somewhat expansive mood, alert and fully cooperative, speech and thought

processes unremarkable, no signs of psychosis or delusions, weak short-term memory, fair attention and concentration, and intact judgment and insight. He also noted that she smiled and laughed excessively, likely using humor to avoid dealing with her underlying emotional distress. After conducting various tests, he went on to conclude that the discrepancy between her verbal comprehension and nonverbal intelligence, combined with low working memory, suggested severely impaired attention and concentration, most likely exacerbated by chronic pain, depression, and anxiety. Tests also revealed a mild learning disability. These results are consistent with his RFC assessment. Likewise, a GAF of 55, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, is also consistent with the opined limitations. Moreover, Dr. Kownacki's opinion that Plaintiff is able to handle her finances does not contradict his assertions that she is limited in her ability to interact appropriately with the public, coworkers, or supervisors. The ability to handle finances in no way relates to limitations in interpersonal interactions.

Finally, there is no basis for the ALJ's assertion that Plaintiff had reason to exaggerate her symptoms during Dr. Kownacki's evaluation. Although financial incentive to exaggerate symptoms may be considered when determining credibility, the ALJ is not free to result to her own personal suspicions. *See* SSR 96-7p (the ALJ cannot base a credibility finding on an intangible or intuitive notion). Dr. Kownacki gave no indication that Plaintiff was not honest in her evaluation or that she was exaggerating her symptoms. Therefore, the ALJ had absolutely no basis for her conclusion that Dr. Kownacki's opinions were not reliable because Plaintiff may have exaggerated her symptoms.

The Court also notes that the SAMC himself opined that Plaintiff has moderate limitations in her abilities to: perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to other, get along with

18

coworkers or peers without distracting them or exhibiting behavioral extremes, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness. These limitations are almost identical to Dr. Kownacki's opinions. The ALJ states in her opinion that she gives greater weight to the conclusion of the SAMC than his "item by item assessments which reflect the work process of the reviewer." This conclusion appears to be that Plaintiff can perform her past relevant work. However, the ALJ goes on to conclude that Plaintiff cannot perform her past relevant work. To say the least, the Court is confused by the ALJ's logic and reasoning.

The ALJ must consider the entire record and cannot "pick and choose" only the evidence that supports her position. *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). The proper inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Id.* In this case, the record as a whole clearly shows that Plaintiff was at least moderately limited in her abilities to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, work in coordination with or proximity to others, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. Therefore, substantial evidence does not support the ALJ's conclusion that these limitations are not supported by the record. Plaintiff's RFC should have included these limitations.

The Court can reverse the ALJ and direct that benefits be paid (as opposed to remanding for further proceedings) where additional fact finding by the ALJ is unnecessary to determine that a claimant is disabled under the Act. *Friday*, 2009 WL 1181068, at *13 (citations omitted). The VE testified at the third hearing that these additional limitations would preclude Plaintiff from all work.

19

Therefore, the Court concludes that additional fact finding is not needed. Substantial evidence supports a decision that Plaintiff was unable to engage in any substantial gainful activity beginning October 29, 1999, by reason of her medically determinable physical and mental impairments. *See* 42 U.S.C. 423(d)(1)(A); *Anthony*, 954 F.2d at 2925. Given the administrative agency's obduracy, as evidenced by its actions in this case on multiple remands, the Court finds that the case should be remanded to the agency with direction that the application for benefits be granted.

### III. CONCLUSION

The delay inherent in a third remand for further consideration is not warranted. The Court hereby orders that the Commissioner's decision be REVERSED and REMANDED to the agency with directions that the application for benefits be granted and for the computation and payment of an award of benefits beginning October 29, 1999.

SO ORDERED, April 1, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE